UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __09-20659-CR-KING__

UNITED STATES OF AMERICA

vs.

SMITH LOGISTICS
INTERNATIONAL, INC.

       **Defendant.**

_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida (hereinafter the "United States" or "government") and Smith Logistics International, Inc. (hereinafter the "defendant" or "Smith Logistics") enter into the following plea agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

    I.    <u>Guilty Plea</u>

    A.    The defendant agrees to plead guilty to the one-count Information filed against it. The Information charges the defendant with one count of violating the Federal Insecticide, Fungicide, and Rodenticide Act, Title 7, United States Code, Section 136*l*(b)(1)(B), by knowingly failing to file a notice required by the Act prior to the importation of a registered plant incorporated pesticide. Title 7, United States Code, Section 136j(a)(2)(N).

    B.    The defendant agrees to admit that it is in fact guilty of the misdemeanor offense charged in the Information and that the attached Joint Factual Statement dated this same day is an accurate statement of its conduct.

II.  Corporate Authorization and Organizational Changes

A.  The defendant will provide to the United States written evidence in the form of a notarized resolution of the Board of Directors with both notary and corporate seals, certifying that Smith Logistics is authorized to plead guilty to the misdemeanor offense set forth in the Information, and to enter into and comply with all provisions of this plea agreement. The resolution shall further certify that its President is authorized to take these actions and that all corporate formalities, including but not limited to, approval by Smith Logistic's sole director, required for such authorization, have been observed. The defendant agrees that the President of the company shall appear on behalf of the company to enter the guilty plea and for imposition of the sentence in the United States District Court for the Southern District of Florida.

B.  At all relevant times, the defendant was a Florida corporation having its headquarters in Miami, Florida and operated as a broker for the purpose of effecting entry into the United States of its clients' products, including preparation and filing of Notices of Arrival as required by the United States Customs and Border Protection and Environmental Protection Agency regulations. Smith Logistics expressly agrees that it shall not, through a business transaction of any type including but not limited to, a change of name, business reorganization, sale or purchase of assets, divestiture of assets, or any similar action, seek to avoid the obligations and conditions set forth in this plea agreement. This plea agreement, together with all of the obligations and terms thereof, shall inure to the benefit of and bind assignees, successors-in-interest, or transferees of the defendant.

III. <u>Sentencing Guidelines and Penalties</u>

A. The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in Section I.A and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

B. The defendant also understands and acknowledges that the Sentencing Guidelines advisory provisions relating to the sentencing of organizations (Chapter Eight) do not apply to the imposition of fines for environmental crimes. *See* U.S.S.G. §8C2.1 (Commentary-Background). The parties agree that the maximum amount of the fine which may be imposed under the statute charged for Count One is the greatest of : (1) the amount specified in the law setting forth the

-3-

offense, in this instance $25,000 pursuant to Title 7, United States Code, Section 136*l*(b)(1)(B); (2) twice the gross pecuniary gain or gross loss resulting from the offense pursuant to Title 18, United States Code, Section 3571(d); (3) or $200,000, pursuant to Title 18, United States Code, Section 3571(c)(5). In addition, the defendant understands and agrees that it may be subject to a term of probation of not more than five years with respect to Count One. Title 18, United States Code, Section 3561(c)(2).

C.  The defendant further understands and acknowledges that, in addition to any sentence imposed under this agreement, a special assessment in the amount of $125 will be imposed on the defendant, payable to the "Clerk, United States Court" at the time of sentencing. Title 18, United States Code, Section 3013(a)(1)(B).

D.  The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, is a prediction, not a promise, and is not binding on the United States, the probation office or the Court. The defendant further understands that any recommendation that the United States makes to the Court as to sentencing, whether pursuant to this plea agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in Section III.A. above, that the defendant may not withdraw its plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the United States, or a recommendation made jointly by both the defendant and the United States.

E.  The United States reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses

-4-

committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this plea agreement, the United States further reserves the right to make any recommendations as to the quality and quantity of punishment.

IV. <u>Sentence Recommendation</u>

The United States and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend to the Court that under the advisory Sentencing Guidelines the following findings and conclusions would correctly represent the calculation of a reasonable and appropriate sentence. Further, neither party shall adopt nor argue any position with respect to sentencing in this matter contrary to the following recommendations:

    A.    The parties agree to recommend that the defendant be placed on organizational probation for a period of three years;

    B.    The parties agree to recommend that as a special condition of probation that the defendant will establish, implement, and enforce a comprehensive Compliance Plan (hereinafter referred to as the "CP") consistent with Sentencing Guidelines Section 8B2.1. The defendant also agrees that it shall not seek early termination of probation until the CP, further described in Section V, has been fully implemented for a continuous two-year period commencing at such time as the independent consultant certifies that the CP is first fully implemented;

    B.    Pursuant to Title 18, United States Code, Section 3571 and Title 7, United States Code, Section 136*l*(b)(1)(B), and in consideration of the factors enumerated in Title 18, United States Code, Section 3572, the United States and the defendant agree that imposition of a criminal fine of $10,000, payable to the "Clerk, United States District Court," is appropriate under the relevant circumstances of this case, to be paid in accordance with a reasonable payment schedule as determined by the Court, $1000 of which shall be paid on the day of sentencing; and

    C.    The parties agree to jointly recommend, that the sentence may properly be imposed according to the terms of this agreement without the need for a Pre-Sentence Investigation and Report. The defendant hereby specifically waives its right to a Pre-Sentence Investigation and Report, including the right to review such a report

advance of sentencing, so that sentence may be imposed immediately following defendant entering its guilty plea.

V.  Compliance Program

The parties agree to recommend, as a special condition of probation, that the defendant establish, implement, and enforce a comprehensive CP consistent with Sentencing Guidelines Section 8B2.1 including but not limited to the following:

A. Within sixty days of sentencing, the defendant will submit its written CP to the District Court Judge assigned to this case, the probation office in the Southern District of Florida, the United States Attorney's Office for the Southern District of Florida, the Environmental Protection Agency, Criminal Investigation Division - Miami Field Office, and the Department of Homeland Security, Immigration & Customs Enforcement - Miami Field Office;

B. Each appropriate employee will receive necessary and appropriate training on applicable regulatory compliance, and defendant will maintain a record of the type of training provided to each employee and the frequency of such training;

C. The defendant will establish employee compliance with regulatory policies and laws as a positive factor in all appropriate personnel evaluations and failure to comply with such policies and laws as a negative factor;

D. Defendant will designate a supervisory employee responsible for regulatory matters and for implementing and overseeing the CP;

E. Defendant will file annual reports commencing one year from the date sentence is imposed with the Court, the United States Attorney's Office, the Environmental Protection Agency, Criminal Investigation Division - Miami Field Office, and the Department of Homeland Security, Immigration & Customs Enforcement - Miami Field Office, regarding the status of the CP and all regulatory audit results and reports conducted pursuant to the CP. The designated supervisory employee responsible for regulatory matters and for the implementation and overseeing of the CP shall review, sign, and submit the annual reports to the above named parties;

F. Defendant will engage the services of an outside independent environmental consultant subject to the approval of the Court and the United States, that will audit the defendant's practices at least once annually during the term of probation to determine compliance with applicable laws and regulations and the terms of the CP. All audit reports shall be submitted to the designated supervisory employee

    responsible for regulatory matters and transmitted on a annual basis to the Court, the United States Attorney's Office, the Environmental Protection Agency, Criminal Investigation Division - Miami Field Office, and the Department of Homeland Security, Immigration & Customs Enforcement - Miami Field Office;

G.  The CP shall remain under the supervision of the Court for the duration of the term of probation. Both parties to this agreement may seek a hearing before the Court within 90 days of receipt of the written CP in the event they are unable to reach agreement on the content of the CP;

H.  Defendant agrees to assume all reasonable costs associated with the implementation, maintenance, and Court oversight of the CP and this special condition of probation.

VI.  <u>Additional Liability</u>

  The United States agrees that in return for the defendant's representations and undertakings in this agreement, the United States will not file additional criminal charges in the Southern District of Florida against it for violations associated with the improper importation of pesticides for conduct in the Southern District of Florida, disclosed and known to the United States as of the date of the signing of this plea agreement. This plea agreement does not provide or promise any waiver of any other criminal, civil or administrative actions that may apply, including but not limited to: fines, penalties, claims for damages to natural resources, suspension, debarment, listing, licensing, injunctive relief, or remedial action to comply with any applicable regulatory requirement.

VII.  <u>Express Waiver of Right to Appeal Guilty Plea and Sentence</u>

  The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum

permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the United States's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that it has discussed the appeal waiver set forth in this agreement with its attorney. The defendant further agrees, together with the United States, to request that the District Court enter a specific finding that the defendant's waiver of its right to appeal the sentence to be imposed in this case was knowing and voluntary.

VIII.   Binding Final Agreement

This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

DATE: 9/10/09       By: _____
                        JODI A. MAZER
                        SPECIAL ASSISTANT U.S. ATTORNEY

**REPRESENTATIVES OF DEFENDANT**

DATE: 9/10/09       By: _____
                        ANDREW SPECTOR, ESQ.
                        ATTORNEY FOR DEFENDANT

DATE: 9/10/09       By: _____
                        IGORT DEL HAYA, PRESIDENT
                        SMITH LOGISTICS INTERNATIONAL, INC.
                        DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __09-20659-CR-KING__

UNITED STATES OF AMERICA

vs.

SMITH LOGISTICS
INTERNATIONAL, INC.,

Defendant.
_____/

## JOINT FACTUAL STATEMENT

This Joint Factual Statement contains an agreed statement of the facts and circumstances that accompany the above referenced criminal case and Plea Agreement signed and dated this same day between the United States and the defendant, SMITH LOGISTICS INTERNATIONAL, INC., (hereinafter referred to as "defendant" or "SMITH LOGISTICS").

During the time period of the conduct charged in the Criminal Information, the federal Insecticide, Fungicide, and Rodenticide Act (hereinafter referred to as "FIFRA"), Title 7, United States Code, Section 136 *et seq.*, was in effect and regulated the sales, distribution, and use of pesticides and empowered the United States Environmental Protection Agency (hereinafter referred to as "EPA") to establish regulations addressing the registration, classification, labeling, sales, and distribution, and use of all pesticides in the United States. In addition, EPA regulations address the storage, transportation, and the disposal of pesticides. FIFRA makes it unlawful for someone who is a registrant, wholesaler, dealer, retailer, or other distributor to fail to file reports required by law. Title 7, United States Code, Section 136j(a)(2)(N). The regulations define "to distribute or sell" as "to distribute, sell, offer for sale, hold for distribution, hold for sale, hold for shipment, ship, deliver

for shipment, release for shipment, or receive and (having so received) deliver or offer to deliver." Title 7, United States Code, Section 136(gg) and Title 40, Code of Federal Regulations, Section 152.1. The EPA regulations go hand-in-hand with the broad and stringent universe of regulatory requirements of the United States Department of Homeland Security, Customs and Border Protection (hereinafter referred to as "CBP").

CBP regulations Title 19, Code of Federal Regulations, Sections 12.110 -12.117 require an importer desiring to import pesticides or devices into the United States, to submit to the EPA a Notice of Arrival of Pesticides and Devices [EPA Form 3540–1], (hereinafter referred to as an "NOA"), prior to the arrival of the shipment in the United States with Part I completed. Part I of the NOA describes the pesticide and provides the EPA Registration Number as well as other required information. The EPA then completes Part II of the NOA, indicating the disposition for the shipment of pesticides or devices upon its arrival in the United States, and return the completed NOA to the importer or his agent. Thereafter, the law requires, upon the arrival of a shipment of pesticides or devices, the importer or his agent present to the CBP at the port of entry the NOA completed by the EPA indicating the CBP action to be taken with respect to the shipment. CBP compares entry documents for the shipment of pesticides or devices with the NOA and notifies the EPA of any discrepancies. The NOA provides CBP personnel at the port of entry, that may not have an expertise in specific pesticides, critical information from EPA personnel that have expertise in the pesticide field. CBP then completes Part III of the NOA and either releases or detains the shipment consistent with EPA instruction. *See* Title 19, Code of Federal Regulations, Sections 163.

Smith Logistics was, at all relevant times, a Florida corporation formed in 1999 as a Licensed Customs House Broker and Freight Forwarder. The defendant specialized in providing integrated,

2

multi-model logistics services through all major United States ports and touts as one of its strengths taking overall responsibility for its clients throughout the logistics chain. As part of their routine business practices, Smith Logistics handled the import paperwork, including any and all required notices, such as the NOAs on behalf of its clients. Smith Logistics acknowledges that employees would advise of the company's technical expertise in CBP issues that could reduce duty exposure and risk of non-compliance.

The Smith Logistics' employee responsible for managing the account in question holds the position of Operations Manager and is, himself, not a licensed Customs Broker, and therefore is required to be supervised by a licensed Customs Broker. The importer in question has been a client since 2002 and regularly imported pesticide product (hybrid corn seed), both by air and by sea using the Miami International Airport and the Port of Miami. The importer, relied on the defendant as its agent/broker, to complete and present the required entry documents, including the NOA as required by CBP regulations. The defendant acknowledges its awareness of those regulatory requirements, and in fact, has complied in the past.

The importation season for the hybrid seed corn is approximately February through May each year with the peek being between March and April. Company employees admitted and emphasized the flow of paperwork during the importation season was a problem with this importer due to the speed with which the product arrived when transported by air, as opposed to being transported by sea. When utilizing sea transport, there were approximately fifteen days between shipment and arrival into the United States and the information necessary for the NOA was conveyed by the importer with sufficient time to facilitate the completion of the NOA, Parts I & II as required by law. When utilizing air transport, the information necessary to complete part one of the NOA was transmitted

to Smith Logistics by the importer the evening before the hybrid seed corn arrived in the United States in the best of circumstances. In 2007, however, the norm was that the hybrid seed corn would actually arrive at the Miami Airport air cargo facility hours before the importer would provide the defendant with the necessary information to complete the NOAs. The Operations Manager would have to inventory the arrivals at the air cargo facility and transmit them to the importer in order to then receive the correct information to complete the paperwork hours later. In addition, during the 2007 importation season for the hybrid corn seed the volume imported doubled from the 3,500 metric tons imported in 2006 to approximately 7,000 metric tons. The defendant's lack of policies, procedures and effective supervision during the 2007 importation season resulted in a total of approximately 202 shipments being imported into the United States without NOAs being submitted to EPA and/or then presented CBP by the defendant. The NOAs with Part I completed by the Smith Logistics Operations Manager were not sent to EPA until after the importation was in transit to the final customer throughout the United States, or not at all, in clear violation of CBP regulations.

The practice of submitting NOAs after-the-fact was, in part, instituted per the verbal direction of the client importer despite the fact that the Operations Manager claimed that he repeatedly told the client that the import could not be finalized and the hybrid seed corn place into transit until EPA signed and returned the completed NOA so it could be presented to CBP. The defendant admitted that the company was not completely comfortable with not having the procedure variance in writing. The Smith Logistics President advised that in past circumstances (not related to the importer in this case) where an importation variance was sought and utilized, the proper procedure was for the defendant to submit a request for determination to CBP. CBP would then reply with a written "ruling." The defendant also admitted that even under a paperless submission process (which this

client was for a period of time), that the defendant was certifying to CBP that all required documents, including EPA signed NOAs, were completed prior to the pesticide entering the United States. The lack of policies, procedures and effective broker supervision related to handling client accounts at Smith Logistics failed to insure that the standard industry process for seeking a written regulatory determination or import variance from CBP was not followed.

Furthermore, under the defendant's management structure, in addition to handling all of the importation documents, the Operations Manager was also responsible for managing the three to five person crews who would load the trucks for transportation to various locations throughout the United States. When the quantity imported doubled in 2007, so did the transportation responsibilities. Despite the doubling in paperwork and transportation workload, the defendant still had only one employee/Operations Manager responsible for all facets of the account. Between having to manage the paperwork, train new individuals, and supervising the loading of the trucks all for a large volume of shipments, the defendant fell significantly behind and was not submitting the Notices of Arrival to EPA and subsequently CBP. The defendant admits that as the licensed broker, it failed to take an active role in the management of the account in question and instead relied solely on the actions of the Operations Manager. The defendant has since voluntarily made significant changes to its process and the 2008 import season was much smoother and defendant asserts all required Notices of Arrival were submitted and maintained as required by the paperless system.

Smith Logistics lacked effective policies, procedures and oversight to insure overall compliance with the laws of the United States in order to detect and deter criminal actions by its employees, notwithstanding its claimed broad expertise in the area of handling all aspect of CBP documentation. In this instance, the Operations Manager acted within his scope of employment and

5

within his authority to oversee and handle the preparation and filing of the required NOAs. The United States does not allege in the charging document, the plea agreement, or this Joint Factual Statement that the owner and President of Smith Logistics had any personal knowledge or individual criminal culpability in failure to file the required NOAs.

Smith Logistics agrees and admits that based on the above facts, that from on or about March 1, 2007 and continuing to on or about May 31, 2007, in Miami-Dade County, in the Southern District of Florida, it was a registrant, wholesaler, dealer, retailer, or other distributor, as defined by FIFRA, and that it knowingly failed to file reports required by law, to wit EPA Form 3540-1, Notices of Arrival of Pesticides and Devices, as required by the Federal Insecticide, Fungicide, and Rodenticide Act in violation of Title 7, United States Code, Sections 136j(a)(2)(N) and 136*l*(b)(1)(B), and Title 18, United States Code, Section 2.

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

DATE: 9/10/09    By: _____
JODI A. MAZER
SPECIAL ASSISTANT U.S. ATTORNEY

**REPRESENTATIVES OF DEFENDANT**

DATE: 9/10/09    By: _____
ANDREW SPECTOR, ESQ.
ATTORNEY FOR DEFENDANT

DATE: 9/10/09    By: _____
IGORT DEL HAYA, PRESIDENT
SMITH LOGISTICS INTERNATIONAL, INC.
DEFENDANT